IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STAN LABER,
            Plaintiff,

v.                                                   Civil Action No. 3:23cv498

LLOYD J. AUSTIN, III, *in his
official capacity as* SECRETARY
OF THE UNITED STATES
DEPARTMENT OF DEFENSE,
            Defendant.

## **OPINION**

In 2018, the plaintiff, Stan Laber, applied for a contract administrator position with the Defense Contracting Management Agency ("DCMA"), part of the United States Department of Defense ("DoD"). DCMA did not select him for the position. Laber now sues the defendant, Lloyd J. Austin III, in his official capacity as Secretary of the DoD. He asserts a failure-to-hire claim, alleging that DoD discriminated and retaliated against Laber in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. §§ 20003, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*

DoD has filed a motion to dismiss, or in the alternative, a motion for summary judgment. (ECF Nos. 48, 49.) Because Laber is a retired annuitant who could not have qualified for the contract administrator position, Laber cannot meet all the elements of any of his claims. The Court, therefore, will grant DoD's motion for summary judgment, (ECF No. 49), and deny as moot DoD's motion to dismiss, (ECF No. 48).

## I. <u>RELEVANT BACKGROUND AND PROCEDURAL HISTORY</u>[1]

Laber, a Jewish man born in 1945, worked in several positions with DCMA and other federal agencies before he retired from federal service on January 9, 2015, under the Civil Service Retirement System ("CSRS").[2] (ECF No. 45 ¶¶ 12, 82; ECF No. 50, at 3; ECF No. 54, at 16.) Because of his status under the CSRS, Laber is classified as a "retired annuitant." (ECF No. 50, at 11; *see* ECF No. 54, at 20 ¶ 10; ECF No. 54-6, at 2.) Both before and after retirement, Laber "filed nearly forty [Equal Employment Opportunity Commission ('EEOC')] complaints" against DoD between 1991–2003 and 2014 "to the present." (ECF No. 45 ¶ 13.) Specifically, on February 27, 2015, "Laber filed a formal complaint with the EEOC alleging that DCMA Milwaukee officials discriminated against him on the bases of his age, sex, religion, and reprisal for prior protected activity." (*Id.* ¶ 18.)

In October 2018, Laber applied for a GS-1102-11 Contract Administrator position with DCMA Milwaukee. (*Id.* ¶ 48.) Despite having "over 20 years of Department of Defense contracting experience," the interviewing panel recommended two candidates ahead of Laber, making him the second alternate for the position. (ECF No. 45 ¶118; *see* ECF No. 50, at 2; ECF

---

[1] This section recounts the facts based on the second amended complaint, the memorandum in support of the motion to dismiss and motion for summary judgment, Laber's response to DoD's motions, and DoD's reply. (*See* ECF Nos. 45, 50, 54, 55.) The facts are either uncontroverted or are viewed in the light most favorable to the non-moving party (here, Laber). *See Simmons v. Whitaker*, 106 F.4th 379, 385 (4th Cir. 2024) ("To decide whether a genuine issues exists, a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party" (internal citation omitted)).

[2] The CSRS "established a retirement system for certain Federal employees" whereby qualified retired federal employees could receive monthly annuity payments. (ECF No. 50-4.) Though Congress replaced the CSRS in 1987 with the Federal Employees Retirement System, federal employees working pre-1987, like Laber, can qualify for annuity payments under the CSRS. (*See id.*)

No. 54 at 3.) DCMA's first choice accepted the position, and Laber did not get the job. (ECF No. 45 ¶¶ 3, 66.)

In February 2023, Laber filed this suit in the United States District Court for the District of Kansas after exhausting his administrative remedies with DCMA and the EEOC. (*See* ECF No. 1.) The District of Kansas transferred the case to this Court on August 9, 2023. (*See* ECF No. 24.) After this Court granted DoD's motion to dismiss in August 2024, it allowed Laber an opportunity to amend his complaint as to the Contract Administrator position. (*See* ECF No. 44.) On September 3, 2024, Laber filed his Second Amended Complaint, to which DoD filed a motion to dismiss or, in the alternative, a motion for summary judgment. (*See* ECF Nos. 45, 50.) DoD's motion to dismiss asserts that Laber's Second Amended Complaint has failed to state claims upon which relief can be granted. (*See* ECF No. 50, at 3.) In the alternative, it argues that the Court should grant summary judgment in its favor due to Laber's status as a retired annuitant who could not have qualified for the Contract Administrator position, an essential element of his Title VII and ADEA claims. (*See id.* at 3–4.)

DoD and DCMA have policies governing retired annuitants that dictate the conditions of the re-hire of such persons. (*See* ECF No. 50-3; ECF No. 50-4.) The job announcement for the Contract Administrator position at issue here indicated that the DoD "policy on employment of annuitants will be used in determining eligibility of annuitants." (ECF No. 50-2, at 2.) The DoD general policy regarding retired annuitants authorizes its component agencies to "[i]ssue supplemental guidance and procedures as appropriate." (ECF No. 50-3, at 4 ¶ 5(b)(2).) In 2014, DCMA, a component of DoD, issued DCMA Instruction 624, the governing policy on

3

"Reemployed Annuitant Hire and Extension" at the time of Laber's application to the Contract Administrator position in 2018.[3] (ECF No. 50-4.)

The policy states that DCMA should only hire retired annuitants "to help meet critical mission needs." (*Id.* at 6.) Examples of critical mission needs include "[f]illing a position designated 'hard-to-fill;'" covering a "short-term workload surge or maintain[ing] required staffing coverage while a program winds down;" "backfill[ing] for individuals who are deployed in support of a contingency operation;" or hiring an annuitant that "has unique or specialized skill or unusual qualifications not generally available." (*Id.* at 6–7.) Retired annuitants, therefore, should only "be hired on a temporary or term appointment," and the DCMA only uses the "non-competitive process" to hire them. (*Id.* at 7.) An "appropriate appointing authority" must approve the request to hire a retired annuitant before hire, and the selecting manager "must provide sufficient justification to support their request to hire an annuitant." (*Id.* at 7, 10.)

## II. LEGAL STANDARD

### A. Standard of Review

Because DCMA has filed both a motion to dismiss and a motion for summary judgment, the Court must first decide which standard to apply to this case. Generally, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (internal citations omitted). The nonmoving party can oppose summary judgment pre-discovery by filing a Rule 56(d) affidavit, "stating that he 'cannot present facts essential to [his] opposition.'" *Id.*

---

[3] On August 30, 2024, DCMA promulgated DCMA Manual 4201-27 which replaced DCMA Instruction 624. Def. Cont. Mgmt. Agency Manual 4201-27 (2024), *available at* https://www.dcma.mil/Portals/31/Documents/Policy/DCMA_MAN_4201-27.pdf. The new policy includes the same four requirements for rehiring a retired annuitant. *See id.*

4

(quoting Fed. R. Civ. P. 56(d)) (alteration in the original). Even if the nonmoving party does not file a Rule 56(d) affidavit, the Court should not grant pre-discovery summary judgment if it "otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Id.* (quoting *Pledger v. Lynch*, 5 F.4th 511, 524 (4th Cir. 2021)) (alteration in the original). District courts "should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition." *Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024).

Here, Laber did not formally file a Rule 56(d) affidavit. But he did include a declaration within his response to DoD's motion for summary judgment asking for an opportunity for discovery, which the Court construes as a Rule 56(d) request. (*See* ECF No. 54-1.) He seeks discovery to obtain: (1) his personnel file showing that he has been receiving annuity payments since March 2015; (2) "relevant electronic communications and records related to the hiring or rejection of applicants and annuitants for a relevant time period based on the status of each individual;" (3) information showing a temporal proximity to prove his retaliation claim; and (4) the "original documents" from the administrative record, due to his perceived insufficiency of the documents already in the administrative record. (ECF No. 54-1 ¶ 5.)

None of the discovery that Laber seeks, nor any other discovery that Laber might be able to obtain, could assist him in genuinely disputing the DoD and DCMA policies applicable to the Contract Administrator position at issue here. Additionally, Laber has already had the opportunity to "discover information essential to [his] opposition" in a nearly identical case in the District of Kansas. *Jenkins*, 109 F.4th at 251. In that case, Laber sued the DoD when it failed to hire him for a Contract Administrator position with the DCMA. *See Laber v. Austin*, No. 18-1351-JWB, 2022 WL 17361437 at *4, *20 (D. Kan. Dec. 1, 2022). Laber participated in "full discovery" in that

5

matter, including a deposition on the topic of retired annuitants' eligibility for rehire. (ECF No. 55, at 14.) Because Laber interviewed for that position after retiring under the CSRS and the same DCMA policy applied to that matter as well, the district court in Kansas found that Laber was not qualified for the position to meet the elements of his ADEA and Title VII claims. *Laber*, 2022 WL 17361437 at *20.

The Court acknowledges that the United States Court of Appeals for the Fourth Circuit strongly disfavors a district court's grant of summary judgment pre-discovery, particularly against a *pro se* party. But those cases typically involved distinctly different procedural backgrounds: (1) those *pro se* plaintiffs did not have access to essential information in the control of those defendants pre-discovery, (2) a district court did not issue a proper *Roseboro* notice, or (3) the *pro se* plaintiff had barriers to prevent them from adequately representing themselves.[4]

Here, the Court issued a *Roseboro* notice to Laber informing him of his obligations in responding to a motion for summary judgment. (*See* ECF No. 53.) Additionally, while *pro se*, Laber is a sophisticated plaintiff who has filed many Title VII and ADEA actions previously, understands the process of summary judgment and discovery, and received discovery in a substantially similar lawsuit. *See Laber v. Austin*, No. 1:22-cv-145, 2023 WL 2579466 (E.D. Va. Mar. 20, 2023); *Laber*, 2022 WL 17361437; *Laber v. Rumsfeld*, No. Civ.A. 03-170-A, 2003 WL 23641779 (E.D. Va. Oct. 8, 2003). And DoD does not have any discovery in its exclusive control that Laber needs to dispute the motion for summary judgment—it has provided both its general

---

[4] *See Jenkins v. Woodard*, 109 F.4th 242 (4th Cir. 2024) (holding that the district court abused its discretion in denying a prisoner's requests for counsel and extension of discovery due to the prisoner's low IQ, lack of general education and legal knowledge, and severe mental health issues); *Shaw*, 59 F.4th at 128–29 (finding that a prisoner's argument rested on the subjective knowledge of prison officials and video evidence in the control of the prison); *Pledger*, 5 F.4th at 525–26 (holding that a prisoner could not obtain "facts bearing on the subjective knowledge" of the defendants without discovery, and that the court did not issue a proper *Roseboro* notice).

policy and DCMA's specific policy on the rehire of retired annuitants in its motion for summary judgment and accompanying briefs. (*See* ECF Nos. 50-3, 50-4.) The DoD general policy is publicly available and, though the 2014 DCMA policy is no longer available due to DCMA Manual 4201-27 replacing it, DCMA's policies have historically been publicly available. *See* U.S. Dep't of Def., Instruction No. 1400.25, Vol. 300 (Dec. 10, 2008), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/140025/1400.25-V300.pdf; Def. Cont. Mgmt. Agency, *DCMA Policies*, https://www.dcma.mil/Policy/ (last visited Nov. 7, 2024). As discussed below, the DCMA policy clearly outlines the criteria for hiring a retired annuitant, and the Contract Administrator position here did not meet that criteria. Accordingly, Laber's Rule 56(d) request for discovery is futile, and the Court will consider Laber's motion under the summary judgment standard.

### B. Summary Judgment Standard

The Court may award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A fact is material if it might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'" *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (citation omitted) (first quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013); and then quoting *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018)).

The party moving for summary judgment "bears the 'initial responsibility'" to show the absence of a genuine dispute of material fact. *Shaw*, 59 F.4th at 129 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party "must then go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). The nonmoving party's "'conclusory

7

allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion.'" *Id.* (quoting *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)) (alteration in the original). The Court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.*

### C. *Legal Standard for Laber's Claims*

Laber asserts a failure-to-hire claim, alleging that DoD discriminated against him due to his sex and religion and that it retaliated against him for filing prior EEOC complaints in violation of Title VII. He also asserts a claim under the ADEA alleging age discrimination.

A plaintiff can make out a prima facie case of Title VII employment discrimination for failure to hire by showing: (1) he "is a member of [a] protected class;" (2) "the employer had an open position for which [he] applied or sought to apply;" (3) he "was qualified for the position;" and (4) he "was rejected under the circumstances giving rise to an inference of unlawful discrimination." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015). To prove retaliation under Title VII, the plaintiff must show "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse action against [him], and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). If an employer rejected a plaintiff for a position for which they were not qualified, the plaintiff cannot meet the elements of a retaliation claim. *See Harris v. Azar*, No. 8:18-cv-03968-PWG, 2020 WL 1452198, at *4 (D. Md. Mar. 25, 2020) (finding that "[f]or an employee to establish that they suffered an adverse employment action in the form of a denial of a benefit, courts require that the employee allege that they were eligible for the benefit" (citing *Thompson v. Potomax Elec. Power Co.*, 312 F.3d 645, 649–50 (4th Cir. 2002))); *Laber*, 2003 WL

8

23641779 at *4 (holding that, because plaintiff "was not qualified for the position, he fails to make out a prima facie case of either discrimination or retaliation").

For an age discrimination claim, Laber must show that he (1) was age 40 or older, (2) suffered an "adverse employment action," (3) was qualified for the position and was "meeting [his] employer's expectations at the time of the adverse action," and (4) was "replaced by or treated less favorably than someone outside the protected class or someone 'substantially younger.'" *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 837 (E.D. Va. 2015) (internal citations omitted); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019).

### III. ANALYSIS

Each of Laber's claims require him to show that he was qualified for the position to which he applied. Relevant here, Laber admits that he is "a retiree and receiving an annuity." (ECF No. 54-6, at 2; *see* ECF No. 54, at 20 ¶ 10.) The DoD policy regarding retired annuitants—which governs the relevant job posting, (*see* ECF No. 50-2, at 3)—gives DoD components authority to "[i]ssue supplemental guidance and procedures as appropriate." (ECF No. 50-3, at 4 ¶ 5(b)(2).) DCMA, a component of DoD, created such supplemental guidance through DCMA Instruction 624, the governing policy on "Reemployed Annuitant Hire and Extension." (ECF No. 50-4.) The DCMA policy limits the rehire of retired annuitants to cases of "mission critical needs" where an "appropriate appointing authority" must first approve the request to hire a retired annuitant before hire, and the selecting manager "must provide sufficient justification to support their request to hire an annuitant." (*Id.* at 6–7, 10.) Hiring a retired annuitant occurs through the non-competitive process. (*Id.* at 7.) DCMA used the competitive process to hire for the Contract Administrator position at issue and hired someone who was not a retired annuitant. (*See* ECF No. 50, at 4; ECF No. 54, at 19.) Thus, this job posting did not permit DCMA to hire a retired annuitant.

9

Laber makes unfounded contentions that the DoD policy does not allow DCMA to create its own retired annuitant policy, and that the DCMA policy does not govern retired annuitants nor restrict retired annuitants for rehire. (*See* ECF 54 ¶¶ 5–8.) But, as explained above, the plain language of the policies and the job posting directly contradict his arguments. He also makes frivolous arguments that the policy was not "'enacted' by DoD or by DCMA based on the fact that the word 'enacted' does not appear in the" relevant policy. (ECF No. 54 ¶ 4.) Yet nothing suggests that the instruction or policies were not enacted at the time of the job posting, and DCMA's policy clearly outlines that a specific process exists to hire a retired annuitant, which DCMA did not follow here. Accordingly, no genuine dispute of material fact exists that Laber did not qualify for the Contract Administrator position. Laber, therefore, cannot meet the elements of his Title VII and ADEA claims, entitling DoD to judgment as a matter of law.

## IV. CONCLUSION

Because the record shows that Laber, a retired annuitant, could not qualify for the Contract Administrator position, and Laber could not gain any additional information through discovery that would help him to defeat DoD's motion, the Court will grant the defendant's motion for summary judgment, (ECF No. 49), and deny the defendant's motion to dismiss as moot, (ECF No. 48).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the *pro se* plaintiff.

Date: 14 November 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge